IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**AARON RODRIGUEZ,**

      **Plaintiff,**

vs.                                                                                                                        No.  **2:23-cv-669**

**HOBBS POLICE DEPARTMENT;
LIEUTENANT CUNNINGHAM;
CHIEF OF POLICE JOHN ORTOLANO;
and CITY MANAGER MANNY GOMEZ,**

      **Defendants.**

### COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT, AND FOR VIOLATIONS OF THE FOURTEENTH AND FIRST AMENDMENTS OF THE UNITED STATES CONSTITUTION

      Plaintiff Aaron Rodriguez (hereinafter referred to as "Plaintiff"), brings this complaint under NMSA 1978, § 10-16C-1 through Section 10-16C-6, the Whistleblower Protection Act, and 42 U.S.C. § 1983 for damages resulting from the violation of the due process clause of the United States Constitution; and, resulting from the retaliation against him for engaging in protected activities, and engaging in speech while, and after, employed by the Hobbs Police Department (hereinafter referred to as "Defendant HPD") as a police officer voicing public concern for the safety, wellbeing, and constitutional rights of other officers working for Defendant HPD and City of Hobbs (hereinafter referred to as "City").

### JURISDICTION AND VENUE

      Plaintiff brings this Complaint under 42 U.S.C. § 1983 for damages resulting from the Deprivation of Civil Rights inflicted upon him by Defendants. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331. Personal jurisdiction is proper since all parties reside, are employed, or have significant contacts in the District of New Mexico.

Additionally, Defendants' actions giving rise to Plaintiff's claims took place within the District of

1

New Mexico. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b) as Defendants' actions causing injury to the Plaintiff took place within the District of New Mexico. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiffs' claims brought under NMSA 1978, § 10-16C-1 through Section 10-16C-6 of the Whistleblower Protection Act.

## PARTIES

1. Plaintiff was an officer employed by Defendant HPD in the City of Hobbs, New Mexico.

2. Defendant HPD is an entity within the County of Lea, State of New Mexico, and a municipality and person pursuant to Section 1983.

3. Lieutenant Cunningham (hereinafter "Defendant Cunningham") was always an employee of Defendant HPD and sued in his official and individual capacity.

4. Chief of Police John Ortolano (hereinafter referred to as "Defendant Ortolano") was always an employee of Defendant HPD and a policymaker for the City. Defendant Ortolano is sued in his official and individual capacity.

5. City Manager Manny Gomez (hereinafter "Defendant Gomez") was always an employee of the City and a policymaker for the City. Defendant Gomez is sued in his official and individual capacity.

## FACTUAL BACKGROUND

6. During the time Defendant HPD employed Plaintiff, he never had any complaints from the public or other officers.

7. Plaintiff worked for Defendant HPD for approximately one year or less.

8. In 2013, following the successful completion of the Southeastern Police Academy at his personal expense, Plaintiff joined the Hobbs Police Department. Like every other academy graduate, Plaintiff underwent the "Field Training Officer" (FTO) phase, comprising four segments.

9. During Plaintiff's time at Defendant HPD, multiple officers, and Defendant Cunningham,

questioned Plaintiff's commitment as a police officer and challenged the department's decision to hire him, perceiving him as a "thug."

10. During Plaintiff's FTO phase, he was summoned to Defendant Cunningham's office. There, Defendant Cunningham interrogated Plaintiff about his family and implied that Plaintiff's motive for joining the force was to supply intelligence to relatives.

11. On one occasion, to test the commitment and loyalty of Plaintiff, and in violation of procedure and policy, Defendant Cunningham forced Plaintiff to perform an operation on his grandmother's house due to his uncle's outstanding warrant.

12. At all times material hereto, Defendant Cunningham supervised the FTO program at Defendant HPD.

13. Still in the FTO phase, Plaintiff was informed by Officer Ahmad White that Defendant Cunningham sought to terminate Plaintiff due to difficulties with report writing during training. This issue was resolved through additional training, allowing them to progress through the phases.

14. On one occasion, Plaintiff reported a dead animal over the radio, as taught during FTO training. However, Plaintiff's supervisor, Sergeant Jeff Moyers, publicly reprimanded him for this, causing severe embarrassment. In response to the embarrassment, Plaintiff denied making the call, but immediately set the record straight with Sergeant Moyers once Plaintiff returned to the station.

15. Despite addressing the misunderstanding and embarrassment with Moyers, the issue was escalated to the administration, resulting in Plaintiff's termination.

16. Chief of Police at the time, Chris McCall, conveyed that, being a probationary officer, they could be dismissed without cause.

17. After being wrongly terminated, Plaintiff served as a police officer for the City of Lovington for approximately four years.

18. In 2016, Plaintiff was speaking with firefighter Ryan Herrera and other officers. Ryan

3

Herrera began to discuss his feeling about an African-American police officer with Defendant HPD, Ahmad White. Herrera immediately stated, "Fuck that nigger!"

19. Plaintiff immediately told Ryan Herrera to stop talking about the situation as it made him extremely uncomfortable.

20. On January 1, 2017, Plaintiff informed Ahmad White of the incident with Ryan Herrera, and Ahmad White reported it to his chain of command.

21. It is important to note that the former Fire Chief, and current City Manager, was Defendant Gomez, who is a close relative of Ryan Herrera.

22. In 2019, Plaintiff reapplied to Defendant HPD with Defendant Ortolano's approval. In an initial meeting with Defendant Ortolano, Plaintiff, and Defendant Ortolano candidly discussed previous incidents and an unrelated 2017 arrest, which had been dismissed.

23. Defendant Ortolano expressed interest in providing a fair opportunity for Plaintiff to prove himself and also stated, "I would love to hire you on with this department because I feel like you can be a great role model to new officers as long as you're being truthful about everything."

24. Plaintiff progressed through the interview stage, and passed through various phases of the application process.

25. However, Plaintiff's application was halted due to the prior arrest in 2017.

26. Plaintiff scheduled a meeting with Defendant Ortolano, where Defendant Ortolano attempted to coerce Plaintiff into admitting guilt for the arrest, despite its dismissal.

27. Plaintiff's application with Defendant HPD would no longer be considered after this.

28. In 2020, Plaintiff began working at the Eunice Police Department under Chief Arcidez.

29. Prior to offering Plaintiff employment, Chief Arcidez contacted District Attorney Dianna Luce of the Fifth Judicial District Attorney's Office, to make sure Plaintiff was never placed on the Giglio List. The Giglio List is compiled by the prosecutor's office containing the names and

details of officers who have been untruthful regarding criminal convictions or other issues that raise the question of credibility.

30. District Attorney Dianna Luce informed Chief Arcidez that Plaintiff was not ever on the Giglio List.

31. While working with the Eunice Police Department Plaintiff made officer of the month three (3) times in one year.

32. Approximately one year later, with changes in leadership at Defednant HPD, Plaintiff applied for a third time.

33. Plaintiff's application was abruptly halted again in Human Resources, before ever getting to the interview stage.

34. This time the narrative shifts from a state police issue to a Giglio issue.

35. Plaintiff voiced concerns about the changing narrative and lack of consistency in explanations for the denial.

36. In a meeting with Defendant Gomez, and City of Hobbs Human Resources Director Nicholas Goulet, Plaintiff was informed that the denial stemmed from a Giglio issue and not the prior 2017 arrest.

37. Plaintiff informed both Defendant Gomez and HR Director Nicholas Goulet that he was never placed on the Giglio List as per the district attorney.

38. After Defendant Gomez met with Defendant Ortolano, he called Plaintiff and informed him that his application denial was in fact the 2017 arrest that was dismissed.

39. Defendants fully and willfully intended to harm Plaintiff by these actions.

40. Upon information and belief, it is because of Plaintiff's association with an African-American officer, and protected, whistleblowing actions of reporting Ryan Herrera's discriminatory behavior that Defendants retaliated against Plaintiff and conspired to prevent him

from ever being employed with Defendant HPD.

41. The actions described above taken by the Defendants were deliberate, intentional, and malicious and undertaken with reckless disregard for the civil rights of Plaintiff, and Plaintiff is entitled to punitive damages.

42. Plaintiff suffered emotional damage and Plaintiff was distressed because he had to go to find work in surrounding municipalities.

43. Plaintiff was disappointed with the lack of action of the Defendants to provide a discrimination-free environment. Plaintiff was distressed among other feelings because he felt retaliated against at his workplace by a coworker in a position of authority. Instead of providing a harassment-free, safe environment for Plaintiff.

44. The action taken by the Defendants against the Plaintiff caused him economic and emotional damage.

45. As a direct and proximate result of these illegal, unlawful, and unwanted behaviors, Plaintiff incurred severe mental injury, pain, and suffering, which required treatment, and caused lasting damage.

46. Defendants' failure to prevent and/or stop the harassment described herein compounded and exacerbated the physical and emotional injuries that Plaintiff was already suffering as a result of the unlawful conduct described above.

47. As a proximate result of Defendant's conduct as described fully above, Plaintiff suffered economic damages, including lost earnings; noneconomic damages, including, without limitation, humiliation, embarrassment, and discomfort; as well as mental and emotional distress and anguish, all to Plaintiff's damages in an amount to be proven at trial.

## COUNT I – VIOLATIONS OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT

48. Plaintiff re-alleges and incorporates each paragraph above as if stated herein.

49. Defendant HPD is a public employer as defined by NMSA 1978, § 10-16C-2.

50. During all times relevant to this Complaint, Plaintiff was a public employee as defined by NMSA 1978, § 10-16C-2B.

51. Plaintiff had reasonable bases to believe that his coworkers, peers, and supervisors had acted unlawfully and improperly; and when he reported that misconduct, Plaintiff acted in good faith.

52. Through attempts to report the misconduct and discrimination at Defendant HPD and the City, and ultimately unveil the culture, Plaintiff engaged in activities expressly protected by § 10-16C-2E and § 10-16C-3 A and B of the New Mexico Whistleblower Protection Act (hereinafter referred to as "WPA").

53. When Plaintiff unveiled the discrimination at Defendant HPD, Defendants retaliated by out-casting Plaintiff and ensuring that Plaintiff would not be able to work in Hobbs or for Defendant HPD ever again.

54. Defendants violated the WPA by retaliating against Plaintiff for engaging in these activities, through their attempts at preventing Plaintiff from seeking further employment elsewhere.

55. As a direct result of Defendants' illegal retaliation against Plaintiff, they are and continue to be damaged in an amount to be proven at trial, which includes but is not limited to; lost past and future wages, lost employment benefits, lost overtime, humiliation including loss of professional reputation and standing, loss of opportunities for promotions, emotional distress, and other compensatory damages.

56. Public policy encouraged Plaintiff to speak out concerning the misconduct at Defendant HPD and City.

57. Defendants' retaliatory conduct was such that the imposition of punitive damages is authorized.

## COUNT II – VIOLATIONS OF THE FIRST AMENDMENT RIGHTS TO FREE SPEECH TO ASSOCIATION UNDER THE UNITED STATES CONSTITUTION

58. Plaintiff re-alleges and incorporates each paragraph above as if stated herein.

59. Under the First Amendment of the United States Constitution, "Congress shall make no law… abridging the freedom of speech…" U.S.C.A. Const. Amend. I

60. Plaintiff intended to bring to light the discrimination by Ryan Herrera and retaliation by Defendants Ortolano, Cunningham, and Gomez. Individuals have the right to freely associate with whomever they chose without retaliation.

61. This was a First Amendment-protected speech on a matter of public concern.

62. Defendants' interest in promoting the efficiency of its public service did not outweigh this public concern, nor invidious retaliation.

63. This protected speech was a motivating factor in the adverse employment actions by Defendants, taken against Plaintiff.

64. Defendants violated Plaintiff's rights to free speech and to free association, guaranteed under the First Amendment when they unreasonably subjected Plaintiff to retaliation for exercising his protected rights.

65. Plaintiff was not afforded his constitutional right, as a police officer, to speak out about the Defendant's discriminatory and retaliatory actions.

66. Defendants punished and retaliated against Plaintiff for his speaking out against Ryan Herrera's discrimination and Defendant Cunningham's retaliation.

67. Defendants violated constitutional law and were deliberately hostile toward Plaintiff.

68. Defendants are liable under 42 U.S.C. § 1983.

69. Plaintiff seeks relief from this Court under the First Amendment of the United States Constitution.

### COUNT III – FOURTEENTH AMENDMENT VIOLATIONS OF SUBSTANTIVE DUE PROCESS

70. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if re-alleged fully herein.

71. Plaintiff has a liberty interest and/or property interest in his employment as a law enforcement officer and his right to air his grievances for the harassment, discrimination, and retaliation he endured from Defendant HPD.

72. Defendants violated Plaintiff's liberty interests which entitled him to the right to prevent persons in governmental positions of power from depriving individuals of their constitutional right to due process.

73. Defendants discriminated against Plaintiff, in violation of his right to liberty and property interests and they are thus liable in violation of 42 U.S.C. § 1983 and violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

74. Defendants discriminated against Plaintiff, for his voicing of the discriminatory behavior of Defendant Cunningham, Defendant Gomez, and Ryan Herrera.

75. Defendants had notice of the discriminatory and retaliatory actions and practices at Defendant HPD for Plaintiff and those who speak out against unlawful practices, and Defendants failed to adequately respond to a hostile environment and instead retaliated against Plaintiff.

76. Defendants are liable for punitive damages for their invidious discrimination and retaliation against Plaintiff.

77. Defendants' actions towards Plaintiff shocks the conscience.

78. Defendants' actions intentionally and willfully deprived Plaintiff of his liberty interests and property interests without due process of law and without recourse for the arbitrary, abusive, and

harassing conduct of Defendants toward Plaintiff.

79. Defendants' actions proximately caused damages to Plaintiff as previously alleged.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court grant judgment in his favor and against Defendants based on the violations of the New Mexico Whistle Blower Protection Act and the Equal Protection Clause and the First Amendment of the United States Constitution; award actual damages; attorney fees and costs; special damages; and punitive damages against individual Defendants for their hateful conduct towards Plaintiff.

Respectfully submitted,

**ZEBAS LAW FIRM, L.L.C.**

By: */s/ Joseph M. Zebas*
Joseph M. Zebas, Esq.
P.O. Box 1675
Hobbs, NM 88241-1675
T: (575) 393-1024
F: (575) 393-1234
joe.zebas@zebaslaw.com
*Attorney for Plaintiff*