IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AARON RODRIGUEZ,

       Plaintiff,

v.                                                                   No. 23-cv-669 MV/GJF

HOBBS POLICE DEPARTMENT;
LIEUTENANT CUNNINGHAM; CHIEF OF
POLICE JOHN ORTOLANO: and CITY
MANAGER MANNY GOMEZ,

       Defendants.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss Plaintiff's

Complaint ("Motion to Dismiss") [Doc. 6]. The Court, having considered the Motion and

relevant law, finds that the Motion is well-taken and will be granted.

## BACKGROUND

The facts as alleged in Aaron Rodriguez's Complaint for Violations of the Whistleblower

Protection Act, and for Violations of the Fourteenth and First Amendments of the United States

Constitution ("Complaint") [Doc. 1] are as follows. Plaintiff was hired by the Hobbs Police

Department ("HPD") in 2013, where he worked for "approximately one year or less." Doc. 1 ¶¶

7-8. For an unspecified portion of his employment, "plaintiff underwent the 'Field Training

Officer' (FTO) phase, comprising four segments." *Id.* ¶ 8. During Plaintiff's employment at

HPD, Defendant Cunningham "supervised the FTO program at Defendant HPD." *Id.* ¶ 12. At

some unspecified point during Plaintiff's employment, Cunningham and "multiple" unnamed

"officers" "questioned Plaintiff's commitment as a police officer and challenged the department's decision to hire him, perceiving him as a 'thug.'" *Id.* ¶ 9. During his FTO phase, Plaintiff "was summoned to Defendant Cunningham's office" where "Cunningham interrogated Plaintiff about his family and implied that Plaintiff's motive for joining the force was to supply intelligence to relatives." *Id.* ¶ 10. Also during his FTO phase, Cunningham "forced Plaintiff to perform an operation on his grandmother's house due to his uncle's outstanding warrant," which was contrary to "procedure and policy." *Id.* ¶ 11. Again during his FTO phase, another officer, Ahmad White, informed Plaintiff that Cunningham "sought to terminate Plaintiff due to difficulties with report writing during training." *Id.* ¶ 13. This issue, however, "was resolved through additional training," and Plaintiff was permitted "to progress through the phases." *Id.* ¶ 13.

As he was "taught during FTO training," on one occasion, Plaintiff "reported a dead animal over the radio." *Id.* ¶ 14. His supervisor, Sergeant Jeff Moyers, "publicly reprimanded him for this," which caused Plaintiff "severe embarrassment." *Id.* Plaintiff then "denied making the call, but immediately set the record straight with Sergeant Moyers once Plaintiff returned to the station." *Id.* The issue, however, "was escalated to the administration, resulting in Plaintiff's termination." *Id.* ¶ 15.

After Plaintiff's termination from HPD, he worked "as a police officer for the City of Lovington for approximately four years." *Id.* ¶ 17.

In 2016, Plaintiff was involved in a conversation with "firefighter Ryan Herrera and other officers." *Id.* ¶ 18. Herrera was "a close relative" of Defendant Gomez, "the former Fire Chief and current City Manager" of Hobbs. *Id.* ¶ 21. Herrera "began to discuss" HPD Officer Ahmed White and said, "Fuck that nigger!" *Id.* ¶ 18. Plaintiff told Herrera to "stop talking about the

situation as it made him extremely uncomfortable." *Id.* ¶ 19. On January 1, 2017, Plaintiff

informed Officer White "of the incident with [] Herrera, and [Officer] White reported it to his

chain of command." *Id.* ¶ 20.

Plaintiff reapplied to HPD in 2019 with the "approval" of Chief of Police John Ortolano,

and "passed through various phases of the application process." *Id.* ¶¶ 22, 24. Nonetheless,

"Plaintiff's application was halted due to [his] prior arrest in 2017," which "had been dismissed,"

and at a meeting scheduled by Plaintiff, Defendant Ortolano "attempted to coerce Plaintiff into

admitting guilt for the arrest, despite its dismissal." *Id.* ¶¶ 25, 26.

In 2020, Plaintiff began working at the Eunice Police Department ("EPD"), "under Chief

Arcidez." *Id.* ¶ 28. Before he was hired, Chief Arcidez confirmed with District Attorney Dianna

Luce of the Fifth Judicial District Attorney's Office that "Plaintiff was never placed on the

Giglio List," which is a list "compiled by the prosecutor's office containing the names and

details of officers who have been untruthful regarding criminal convictions or other issues that

raise the question of credibility." *Id.* ¶¶ 29-30. Plaintiff was named "officer of the month" three

times in one year while working at EPD. *Id.* ¶ 31.

"Approximately one year later" from an unspecified date or event, Plaintiff reapplied to

HPD. *Id.* ¶ 32. Plaintiff's application "was abruptly halted again in Human Resources." *Id.* ¶ 33.

When he was advised by Defendant Gomez and City of Hobbs Human Resources Director

Nicolas Goulet that "the denial stemmed from a Giglio issue," he informed them that "he was

never placed on the Giglio list." *Id.* ¶¶ 36-37. After meeting with Defendant Ortolano, Defendant

Gomez advised Plaintiff "that his application denial was in fact the 2017 arrest that [had been]

dismissed." *Id.* ¶ 38.

Based on these facts, Plaintiff commenced the instant action by filing his Complaint. Doc. 1. The Complaint includes three counts: "Count I – Violations of the New Mexico Whistleblower Protection Act ("WPA")," "Count II – Violations of the First Amendment Rights to Free Speech to Association Under the United States Constitution," and "Count III – Fourteenth Amendment Violations of Substantive Due Process." *Id.* Defendants HPD, Cunningham, Ortolano and Gomez collectively have moved to dismiss the Complaint in its entirety. Doc. 6. Plaintiff agrees that HPD is not properly named as a defendant in his federal constitutional claims, but otherwise opposes Defendants' motion. Doc. 18. Defendants' Motion to Dismiss is now before the Court.

## STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent

4

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

## DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on three grounds: (1) Plaintiff cannot state a claim under the WPA because he was not an employee of HPD during the relevant period; (2) Plaintiff fails to state any cognizable federal constitutional claims under 42 U.S.C. § 1983; and (3) HPD is not a suable entity under § 1983. Plaintiff agrees only with the third contention, namely, that HPD was not properly named as a defendant in his § 1983 claims. As set forth herein, the

5

Court agrees with Defendants that Plaintiff has failed to sufficiently state any claims under the WPA or § 1983.

I.    <u>WPA Claims</u>

In Count I of the Complaint, Plaintiff asserts that, when he "unveiled the discrimination at HPD, Defendants retaliated by outcasting *[sic]* Plaintiff and ensuring that Plaintiff would not be able to work in Hobbs or for Defendant HPD ever again." Doc. 1 ¶ 53. Through this retaliation, Plaintiff further asserts, "Defendants violated the WPA." *Id.* ¶ 54. According to Plaintiff, at "all times relevant to this Complaint," Defendant HPD was a public employer, and Plaintiff was a public employee, as defined in the WPA. *Id.* ¶¶ 49-50.

The WPA provides, *inter alia*, that a "public employer shall not take any retaliatory action against a public employee" because that employee "communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." N.M. Stat. Ann. § 10-16C-3. For purposes of the WPA, a "public employee" is defined as "a person who works for or contracts with a public employer." N.M. Stat. Ann. § 10-16C-2. The WPA "protects all people who obtain public employee status." *Velasquez v. Regents of N. New Mexico Coll.*, 484 P.3d 970, 991-92 (N.M. Ct. App. 2021). However, "nothing in [the] WPA supports equating people who have an existing employment relationship with a public employer . . . with people who do not but are seeking to establish one – *prospective* public employees." *Id.* (emphasis in original). Further, "[t]he WPA does not permit a public employee to assert a claim against a state officer in his or her individual capacity." *Flores v. Herrera*, 384 P.3d 1070, 1071 (N.M. 2016). Finally, there is a two-year statute of limitations for filing claims under the WPA. *Herald v. Bd. of Regents of Univ. of New Mexico*, 357 P.3d 438, 445 (N.M. Ct. App. 2015) (citing N.M. Stat. Ann. § 10-16C-6).

Here, the Complaint makes clear that Plaintiff was hired by HPD in 2013 and worked there for "approximately one year or less." Doc. 1 ¶¶ 7-8. Accordingly, it was only during this one-year period from 2013 to 2014 that Plaintiff was a "public employee" of HPD within the meaning of the WPA. It follows that the WPA prohibited HPD as a "public employer" from taking any retaliatory action against Plaintiff for engaging in protected communication only during that one-year period while Plaintiff worked for HPD. But the Complaint contains no allegations that Plaintiff "unveiled" any discrimination by HPD while he was an employee of HPD, or that HPD took any retaliatory action against Plaintiff while he was an employee of HPD. And indeed, even if it did, a WPA claim based on such allegations, set forth in the Complaint that was not filed until 2023, would be time-barred under the two-year statute of limitations. *See Herald*, 357 P.3d at 445.

Although far from clear, it is possible that Plaintiff bases his WPA claim on the events surrounding the incident that occurred three years after his termination from HPD in 2016 during which Herrera, referring to HPD Officer White, said, "Fuck that nigger!" and Plaintiff told him to "stop talking about the situation as it made him extremely uncomfortable." Doc. 1 ¶¶ 18-21. But at the time of the 2016 incident and HPD's subsequent refusals to rehire Plaintiff, Plaintiff did not "work[] for or contract[] with" HPD; he had been terminated "one year or less" after he began working for HPD in 2013. *Id.* ¶¶ 7-8. Indeed, Plaintiff necessarily was not an employee of HPD at the time he sought re-employment there. Because Plaintiff did not "have an existing employment relationship with [HPD]" but rather was "seeking to establish one," Plaintiff cannot state a WPA claim against HPD for its failure to rehire him in alleged retaliation for his role in the events surrounding the 2016 incident. *Velasquez*, 484 P.3d at 991-92.

Finally, the Court notes that, even if he were able to state a WPA claim, that claim could not be made against the individual Defendants, namely, Cunningham, Ortolano and Gomez, in

their individual capacity. *Flores*, 384 P.3d at 1072. Accordingly, the WPA claims as against those Defendants would be subject to dismissal for this additional reason.

In sum, because it is devoid of allegations that HPD took any retaliatory action against Plaintiff while he was an employee of HPD, the Complaint fails to state a WPA claim. And because the WPA does not allow a public employee to assert a claim against a state officer in their individual capacity, even if the Complaint did state a WPA claim, that claim would be subject to dismissal as against Defendants Cunningham, Ortolano, and Gomez.

II.    First and Fourteenth Amendment Claims

In Count II, Plaintiff asserts First Amendment claims, and in Count III, Plaintiff asserts Fourteenth Amendment claims. These federal constitutional claims are analyzed under 42 U.S.C. § 1983. *See Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (Section 1983 is the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights").

*Section 1983 – Applicable Law*

"A cause of action under Section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). A plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046. "Collective allegations" regarding the alleged wrongdoing will not meet the pleading standard. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). Accordingly, "[i]n § 1983 cases, where "defendants [] include the government agency and a number of government actors sued in their individual capacities," it is "particularly important" that "the complaint make clear

8

exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Id.* (emphasis in original).

Further, "[a]lthough a municipality is a 'person' subject to suit under § 1983 for constitutional violations, it 'cannot be held liable solely because it employs a tortfeasor.'" *Whitson v. Bd. of Cnty. Comm'rs of Cnty. of Sedgwick*, 106 F.4th 1063, 1066 (10th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, "a municipality is responsible only for (1) actions taken by subordinate employees in conformity with preexisting official policies or customs and (2) actions taken by final policymakers, whose conduct 'can be no less described as the official policy of a municipality.'" *Whitson*, 106 F.4th at 1066 (quoting *Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015)). Notably, "police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality." *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. 1992).

Finally, "for § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014).

*HPD is Not Properly Named as a Defendant.*

As an initial matter, and as Plaintiff agrees, Plaintiff cannot assert a § 1983 claim against HPD. Doc. 18 ¶ 1. As a police department, HPD is not a "suable entit[y]" under § 1983. *Ketchum*, 1992 WL 51481, at *2. Accordingly, Plaintiff's First Amendment and Fourteenth Amendment claims, as set forth in Counts II and III, must be dismissed as against HPD. Although Plaintiff suggests that "the City of Hobbs should be named in place of [HPD]," Doc. 18 ¶ 1, the Complaint does not include any allegations that the City of Hobbs promulgated a policy or custom that caused

any of the alleged constitutional violations. The City of Hobbs cannot be held vicariously liable solely because it employs an individual whom Plaintiff alleges violated his constitutional rights. *Whitson*, 106 F.4th at 1066. Without any allegations that the City of Hobbs authored a policy or custom that the individual Defendants followed, thereby violating Plaintiff's constitutional rights, the Complaint fails to state a claim against the City of Hobbs.

*Plaintiff Fails to State a First Amendment Claim.*

In Count II, Plaintiff appears to be invoking both the First Amendment right to be free from retaliation for protected speech and the First Amendment right to associate for the purpose of engaging in constitutionally protected activities. After generally referring to his preceding statement of facts, Plaintiff makes vague and conclusory assertions that, even read together, fall short of stating that any of the individual Defendants, through their own actions, personally violated either of these First Amendment protections.

As noted above, Plaintiff was not an employee of HPD during the 2016 incident with Herrera or when he was denied re-employment by HPD. In order to state a First Amendment retaliation claim as a non-employee, a plaintiff must state facts that, if proven, would show that: (1) "the plaintiff was engaged in constitutionally protected activity"; (2) "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1250 n.2 (10th Cir. 2024). The allegations in the Complaint do not state facts that, if proven, would show these three elements.

First, it is unclear what "constitutionally protected activity" Plaintiff was engaged in. *Id.* Plaintiff asserts that he "intended to bring to light the discrimination by Ryan Herrera and

retaliation by Defendants Ortolano, Cunningham, and Gomez." Doc. 1 ¶ 60. As to the "discrimination by Ryan Herrera," the factual allegations in the Complaint state that, at some point in 2016, when Herrera "began to discuss" HPD Officer White and said, "Fuck that nigger!" Plaintiff told Herrera to "stop talking about the situation as it made him extremely uncomfortable." *Id.* ¶¶ 18-21. Thereafter, on January 1, 2017, Plaintiff informed Officer White "of the incident [] with Herrera, and [Officer] White reported it to his chain of command." *Id.* ¶ 20. There is no other factual allegation of Plaintiff "bring[ing]to light the discrimination by Herrera." Indeed, there are no allegations that Plaintiff reported this conversation to anyone at HPD other than Officer White himself. And it was Officer White, not Plaintiff, who "reported it to his chain of command." Nor are there any factual allegations in the Complaint reflecting Plaintiff "bring[ing] to light . . . retaliation by Defendants Ortolano, Cunningham, and Gomez." Nowhere does the Complaint explain how, when, where, or to whom Plaintiff brought to light any retaliation by these individuals, much less detail what that "retaliation" entailed.

In a one-sentence paragraph that follows, Plaintiff conclusorily asserts: "This was a First-Amendment protected speech on a matter of public concern." *Id.* ¶ 61. But Plaintiff does not explain what "this" is. It is impossible to determine what he claims to have been "a First-Amendment protected speech," or what "matter of public concern" that speech addressed.

Similarly, it is impossible to discern which actions, by which Defendants, caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in [any] "protected activity." *Pryor* 99 F.4th at 1250 n.2. Plaintiff summarily asserts that "Defendants violated Plaintiff's right to free speech and to free association, guaranteed under the First Amendment when they unreasonably subjected Plaintiff to retaliation for exercising his protected rights," and that "Plaintiff was not afforded his constitutional right, as a police officer, to speak

11

out about the Defendant's discriminatory and retaliatory actions." *Id.* ¶¶ 64-65. Nowhere does Plaintiff state which individuals Defendants violated his First Amendment rights, what actions one or more of them took that "unreasonably subjected Plaintiff to retaliation," or what conduct Plaintiff engaged in that he describes as "exercising his protected rights." Similarly, Plaintiff does identify which individual Defendants took "discriminatory and retaliatory actions" against him or what those actions entailed; nor does he describe any attempts by him to "speak out" about such actions.

The only potential injury identified in the Complaint is HPD's refusals to rehire Plaintiff. But the first time that Plaintiff reapplied to HPD and was denied employment was in 2019, *id.* ¶ 22; any action based on that refusal to rehire would be time-barred. It is impossible to discern from the Complaint when Plaintiff next reapplied to HPD. The Complaint alleges that he reapplied "approximately one year later" from an unspecified date or event. *Id.* ¶ 32. Without any specific date, the Court is unable to discern whether an action based on HPD's second refusal to rehire him is timely. In any event, the Complaint is devoid of factual allegations alleging who did what to Plaintiff, thereby chilling his further engagement in constitutionally protected activity, in connection with HPD's second refusal to rehire him.

Finally, Plaintiff alleges no facts to establish that any adverse actions by Defendants were "substantially motivated as a response" to Plaintiff's "exercise of constitutionally protected conduct." *Pryor*, 99 F.4th at 1250 n.2. Plaintiff summarily asserts that "[t]his protected speech was a motivating factor in the adverse employment action by Defendants, taken against Plaintiff," and that "Defendants punished and retaliated against Plaintiff for his speaking out against Ryan Herrera's discrimination and Defendant Cunningham's retaliation." Doc. 1 ¶ 63, 66. Again, the Complaint fails to make clear what Plaintiff means by "this protected speech," what specific

adverse actions were taken by any specific individual Defendants, how Plaintiff was "punished and retaliated against" and by which individuals, what constitutes his "speaking out against Ryan Herrera's discrimination and Defendant Conningham's retaliation," and what he means by "Defendant Cunningham's retaliation."

As noted above, the only potentially non-time-barred injury identified in the Complaint is HPD's second refusal to rehire Plaintiff. In connection with that refusal, the Complaint indicates that Defendant Gomez advised Plaintiff "that his application denial was in fact the 2017 arrest that [had been] dismissed." *Id.* 38. Nowhere does the Complaint allege any facts to demonstrate that, to the contrary, Plaintiff was denied reemployment as a response to his "exercise of constitutionally protected conduct." *Pryor*, 99 F.4th at 1250 n.2. Moreover, the Complaint is devoid of factual allegations alleging who did what to Plaintiff, in response to his engagement in constitutionally protected activity, in connection with HPD's second refusal to rehire him. For these reasons, the Complaint fails to state a First Amendment retaliation claim.

In addition to invoking the right to be free from retaliation for engaging in protected speech, Plaintiff also asserts that "[i]ndividuals have the right to freely associate with whomever they cho[o]se without retaliation." *Id.* ¶ 60. In *Roberts v. United States Jaycees*, 468 U.S. 609 (1993), the Supreme Court "enunciate[ed] two types of associational rights": "freedom of expressive association, based on the first amendment, and freedom of intimate association . . . an intrinsic element of personal liberty." *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993). To invoke either type of associational right in the context of a § 1983 claim, a plaintiff must allege "intent to interfere with a particular relationship protected by the freedom of [] association." *Trujillo v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). A complaint, then, will be subject to dismissal if it "does not allege intent on the part of defendants to deprive [plaintiff]

of [a] protected relationship." *Id.*

As noted above, Plaintiff summarily asserts that "Defendants violated Plaintiff's right to free speech *and to free association*, guaranteed under the First Amendment when they unreasonably subjected Plaintiff to retaliation for exercising his protected rights." Doc. 1 ¶ 64 (emphasis added). Plaintiff does not clarify what sort of associational right he is invoking here, "the right to associate for the purpose of engaging in those activities protected by the First Amendment," or the right to "enter into and maintain certain intimate human relationships." *Roberts*, 468 U.S. at 617-18. The Complaint contain no allegations that would clarify whether, for example, he is asserting that Defendants' actions prevented him from associating for the purpose of engaging in protected speech, or that Defendants' actions prevented him from maintaining his friendship with Officer White. Indeed, the Complaint contains no allegations as to who did what to Plaintiff that infringed his rights to expressive association and/or intimate association. It follows that the Complaint contains no allegations that any of the individual Defendants had the requisite intent to interfere with any of Plaintiff's protected relationships. Accordingly, the Complaint fails to state a freedom of association claim.

*Plaintiff Fails to State a Fourteenth Amendment Claim.*

Count III of the Complaint is entitled, "Fourteenth Amendment Violations of Substantive Due Process." Doc. 1 at 9. This Count contains no factual allegations, but rather generally refers to his preceding statement of facts – the same facts on which his First Amendment claim is predicated. As an initial matter, this Count fails to "make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250 (emphasis in original). Instead, each paragraph contains legal conclusions without any factual substantiation. *See, e.g.,* Doc. 1 ¶ 72-75 ("Defendants violated Plaintiff's liberty interests"; "Defendants discriminated against Plaintiff, for voicing of

14

the discriminatory behavior of Defendant Conningham, Defendant Gomez, and Ryan Herrera"; "Defendants discriminated against Plaintiff, in violation of his right to liberty and property interests"; "Defendants failed to adequately respond to a hostile environment and instead retaliated against Plaintiff.").

Further, to the extent that Plaintiff does, in fact, intend to assert a substantive due process claim concerning HPD's refusal to rehire him because of his exercise of protected speech, that claim "is entirely duplicative of his First Amendment claims." *Abdulmutallab v. Sessions*, 17-cv-2494, 2019 WL 1064062, at \*7 (D. Colo. Mar. 6, 2019) "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266. Accordingly, "substantive due process does not provide additional protections where, as here, it would be duplicative of other constitutional claims in the lawsuit." *Abdulmutallab*, 2019 WL 1064062, at \*7. Rather, "Plaintiff's claim will rise and fall on his First Amendment theory, not substantive due process." *Id.* And although "substantive due process violations have been recognized where government conduct lacks fundamental fairness to a degree that shocks the conscience," *id.*, Plaintiff has failed to provide any factual allegations to substantiate that any of the individual Defendants' actions toward him "shock[ed] the conscience." Doc. 1 ¶ 77. Accordingly, Count III, to the extent it asserts a substantive due process claim, must be dismissed.

To the extent that Plaintiff also seeks to assert a procedural due process claim in Count III, that claim, too, is subject to dismissal. "The Fourteenth Amendment forbids the State from depriving an individual of life, liberty, or property without due process of law. *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008). "A person alleging that he

has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." *Id.* (citations omitted). Here, Plaintiff conclusorily asserts that "Defendants violated Plaintiff's liberty interests which entitled him to the right to prevent persons in governmental positions of power from depriving individuals of their constitutional right to due process," and that Defendants' actions "deprived Plaintiff of his liberty interests and property interests without due process of law." Doc. 1 ¶¶ 72, 78. The Complaint is devoid of factual allegations that, if true, would prove "that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." *Couture*, 535 F.3d at 1256. Without any factual support, Plaintiff's "threadbare recitals of the elements" of procedural due process, "supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, Count III, to the extent it asserts a procedural due process claim, must be dismissed.

### III.    Leave to File a Rule 15 Motion to Amend

The Court will permit Mr. Rodriguez an opportunity to file a motion for leave to file an amended complaint as to those claims that are subject to dismissal without prejudice, namely, his First and Fourteenth Amendment claims as to the individual Defendants. Any amended complaint must comply with the relevant standards as detailed in this Opinion. Mr. Rodriguez has 45 days within which to file a motion for leave to amend, attaching a proposed amended complaint to such motion. If he chooses to file a motion for leave to amend, and Defendants do not consent in writing thereto but instead oppose Mr. Rodriguez's motion, it will be within the discretion of the Court to determine whether to grant leave to file the proposed amended complaint. If Plaintiff fails to timely

16

file a motion for leave to amend, the Court will enter a final judgment closing this case.

## CONCLUSION

As set forth above, because the Complaint contains no factual allegations that HPD took any retaliatory action against Plaintiff while he was an employee of HPD, Plaintiff fails to state a WPA claim. Further, because the WPA does not allow a public employee to assert a claim against a state officer in their individual capacity, even if the Complaint did state a WPA claim, that claim would be subject to dismissal as against Defendants Cunningham, Ortolano, and Gomez. Because HPD is not a suable entity under § 1983, Plaintiff's federal constitutional claims must be dismissed as against HPD. The allegations in the Complaint are too vague and conclusory to state a First Amendment claim against any of the individual Defendants. Plaintiff's Fourteenth Amendment substantive due process claim fails as it is duplicative of his First Amendment claim. To the extent that Plaintiff intends to assert a procedural due process claim, that claim also fails as the allegations are too vague and conclusory to adequately state a claim.

**IT IS THEREFORE ORDERED** as follows: Defendants' Motion to Plaintiff's Complaint [Doc. 6] is **GRANTED** as follows: Plaintiff's WPA claims, as set forth in Count I, are dismissed with prejudice; Plaintiff's First Amendment claims, as set forth in Count II, are dismissed with prejudice as to HPD and are dismissed without prejudice as to the individual Defendants; and Plaintiff's Fourteenth Amendment claims, as set forth in Count III, are dismissed with prejudice as to HPD and are dismissed without prejudice as to the individual Defendants. Plaintiff will be given 45 days within which to file a Rule 15 motion for leave to amend his complaint as to those claims that have been dismissed without prejudice. If Plaintiff fails to timely comply, the Court will enter a final judgment closing this case.

DATED this 29th day of April 2025.

_____
MARTHA VÁZQUEZ
Senior United States District Judge